IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHRISTIN MILLER,

           Plaintiff,

v.                                        CIVIL ACTION NO.   2:12-cv-03461

FEDERAL EXPRESS CORPORATION, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the court is the Defendants' Motion for Summary Judgment [Docket 93] and the Plaintiff's Motion to Strike "Exhibit A" from Reply Brief [Docket 99]. For the reasons stated below, the motion for summary judgment [Docket 93] is **GRANTED in part** and **DENIED in part**, and the motion to strike [Docket 99] is **GRANTED**.

**I. Motion to Strike Exhibit A from Reply Brief**

The defendants' reply memorandum in support of their motion for summary judgment contains a six-page, single-spaced exhibit that rebuts factual allegations. This is not a proper exhibit. Factual rebuttals are properly contained within the body of a memorandum. Accordingly, the Plaintiff's Motion to Strike "Exhibit A" [Docket 99] is **GRANTED**.

Further, I admonish the defendants for violating this court's Local Rules on line spacing. Instead of using double-spacing as required, the defendants used what appears to be 1.5 spacing in briefing for this motion and nearly every other motion made in this case. *See* L.R. Civ. P. 7.1(a)(3). This tactic, as well as attaching the now-stricken exhibit, is an attempt to circumvent the 20-page

limit on briefing. *See* L.R. Civ. P. 7.1(a)(2). The defendants' counsel is cautioned that sanctions may follow any future failure to conform to applicable rules.

## II. Factual Background

The plaintiff in this case was employed by defendant Federal Express Corporation ("FedEx") as a part-time customer service agent. She complains that FedEx, along with defendant Norma Gonzalez, wrongfully cut her hours and terminated her after she became pregnant and could not lift more than 25 pounds. The following facts are undisputed. The plaintiff worked the front counter at Charleston's FedEx station where she processed, weighed, and distributed packages, answered phones, sold packaging materials, and researched addresses. (*See* Miller Dep. [Docket 96-3], at 48-52, 62). After more than a year on the job, on May 10, 2011, the plaintiff confirmed that she was pregnant and received a note from her nurse stating, "Due to current medical condition, Christin does not need to lift over 25lbs." (Note [Docket 96-6]). The next day, the plaintiff informed her supervisor, Norma Gonzalez,[1] that she was pregnant and gave Gonzalez the note with the 25 pound lifting restriction. Gonzalez forwarded the note FedEx's human resources officials. On May 12, 2011, FedEx placed the plaintiff on an involuntary "medical leave of absence" under FedEx's Temporary Return to Work Policy ("TRW"). (*See* Jones Dep. [Docket 96-9], at 38-39). FedEx's TRW capped the plaintiff's hours at 21 each week and authorized the plaintiff to avoid lifting anything exceeding 25 pounds. (Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem.") [Docket 94], at 4; Letter from Gregory Barkdull [Docket 96-10]; Letter from Michael Rosato [Docket 96-15]). According to FedEx, TRW leave would last 365 days. The plaintiff worked her light-duty assignment with a 25-pound lifting restriction under the TRW policy for the remainder of her pregnancy. (*See* Miller Dep. [Docket 96-3], at 91, 144).

---

[1] Ms. Gonzalez appears to be erroneously identified in the Complaint as Norma "Gonzales."

In May 2011, FedEx also placed the plaintiff on medical leave under the Family Medical Leave Act ("FMLA"), even though the plaintiff continued working. FedEx determined how much available FMLA leave the plaintiff used each week by subtracting her hours actually worked, which were capped at 21, from 27.23 hours, the average number of hours the plaintiff worked prior to being placed on FMLA leave. (*See* Jackson Decl. [Docket 93-24] ¶ 9). Therefore, although the plaintiff continued working, FedEx determined that she was using several hours of FMLA leave each week. By December 31, 2011, the plaintiff had exhausted her available leave under the FMLA. (*See id.*).

The plaintiff gave birth to her child on January 2, 2012. On January 11, 2012, FedEx notified the plaintiff that because she had been on leave in excess of 90 days, and her FMLA leave had been exhausted, her position at the Charleston station could be eliminated or replaced. (*See* Letter from Michael Rosato [Docket 96-21]; Miller Dep. [Docket 96-3], at 146). In fact, the plaintiff's position was eliminated, and the plaintiff was told she could remain on leave until May 18, 2012, at which time she would be terminated if she did not secure another position with FedEx. (*See* Miller Dep. [Docket 96-3], at 153; Gonzalez Dep. [Docket 96-2], at 74-76; Davis Decl. [Docket 93-23] ¶¶ 12-14). In March 2012, the plaintiff applied for and was offered a handler position in Huntington, which the plaintiff declined. The plaintiff contends that the Huntington position was not economically feasible for her because she would be required to commute to Huntington and the position only offered three hours of work each day. (*See* Miller Dep. [Docket 96-3], at 179-80; Pl.'s Resp. to Defs.' Mot. for Summ. J. ("Pl.'s Resp.") [Docket 96], at 8). The plaintiff was terminated on May 21, 2012. (*See* Letter from Michael Rosato [Docket 96-23]).

The plaintiff brings four claims against FedEx and Gonzalez: (1) employment discrimination and retaliation in violation of the West Virginia Human Rights Act ("WVHRA"),

3

(2) wrongful termination under the FMLA, (3) wrongful interference with FMLA rights, and (4) retaliation in violation of the FMLA. In addition to back wages and other compensatory damages and interest, the plaintiff seeks punitive damages under the WVHRA and liquidated damages under the FMLA. The defendants now move for summary judgment on all claims, as well as punitive and liquidated damages.

### III. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126,

1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

## IV. Analysis

### A. West Virginia Human Rights Act Discrimination Claim

The plaintiff argues that FedEx discriminated against her based on her pregnancy and a perceived disability, both in violation of the WVHRA. I **FIND** that material disputes of fact preclude summary judgment on the basis of pregnancy discrimination, but not on the basis of a perceived disability. I address both theories below.

#### *1. Pregnancy Discrimination*

Pregnancy-based discrimination in employment violates the WVHRA. Syl. Pt. 2, *Frank's Shoe Store v. W. Va. Human Rights Comm'n*, 365 S.E.2d 251, 252 (W. Va. 1986); *see* W. Va. Code § 5-11-1, *et seq.* A plaintiff bringing a claim under the WVHRA must first make out a prima facie case of discrimination. *Montgomery Gen. Hosp. v. W. Va. Human Rights Comm'n*, 346 S.E.2d 557, 560 (W. Va. 1986). At that point, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant is successful in articulating a legitimate, nondiscriminatory reason for its actions, the plaintiff then has an opportunity to demonstrate that the defendant's reason is merely a pretext for discrimination. *Id.*

The Supreme Court of Appeals has laid down a general framework for making out a prima facie case:

> (1) That the plaintiff is a member of a protected class.
> (2) That the employer made an adverse decision concerning the plaintiff.
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

*Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 429 (W. Va. 1986).[2] On the final prong, the Supreme Court of Appeals has stated that "[d]irect proof . . . is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Id.* at 429-30.

The first requirement for establishing a prima facie case—that the plaintiff is a member of a protected class—is undisputed. The second requirement—that the defendants took an adverse employment action against the plaintiff—is also undisputed. The plaintiff's hours were capped and her position at FedEx was eliminated while she was on leave. The main dispute is over the third requirement—whether the defendants' actions were based on illegal discrimination. On this point, the plaintiff has presented sufficient evidence to create a genuine dispute of material fact.

First, the defendants argue that FedEx did not discriminate illegally because the plaintiff was not qualified for her position when she could not lift up to 75 pounds. But there is a dispute of fact whether the plaintiff was qualified for her position. Both parties point to a job description for a "Senior Service Agent" position that lists "ability to lift 75 lbs." as a "required" skill. (*See* Job Description [Docket 96-7], at 2). The plaintiff does not dispute that lifting 75 pounds was listed as a "required" duty on the job description, but the plaintiff argues lifting 75 pounds was not listed as an "essential" duty or responsibility on the job description. There is also a dispute of fact regarding how frequently an employee in the plaintiff's position handled packages exceeding 25 pounds. The plaintiff testified that packages exceeding 25 pounds arrived "maybe once a day or a couple

---

[2] The plaintiff asks the court to apply a more detailed version of this test as set out in *Frank's Shoe Store*, 365 S.E.2d at 258, because it involved a pregnancy discrimination claim. But the court in *Frank's Shoe Store* did not create a mandatory, separate test for pregnancy-based discrimination claims. Rather, the court merely reviewed a determination by the Human Rights Commission and found that "the appellant has demonstrated that she is a member of a protected class; that she was capable of performing her normal duties; that her duties were reduced because of her pregnant condition; and that no males actually or potentially could be treated similarly." *Id.* This passage, to which the plaintiff points, does not abrogate the general test set out *Conaway*.

times a week" unless it was peak season. (*See* Miller Dep. [Docket 96-3], at 66-67). Defendant Gonzalez, however, testified that 50 percent of the packages exceeded 25 pounds. (*See* Gonzalez Dep. [Docket 96-2], at 52).

Second, the defendants argue that the plaintiff was placed on medical leave because she requested light-duty work, not because of her pregnant condition. (*See* Defs.' Mem. [Docket 94], at 7). On this point, too, there is a dispute of fact. Before the plaintiff's pregnancy, she received good scores on her annual performance reviews. (*See* Reply Brief in Supp. of Defs.' Mot. for Summ. J. ("Reply Br.") [Docket 97], at 2 n.1). But upon reporting her pregnancy, and without requesting a limited work schedule, FedEx placed the plaintiff on medical leave, limited her work hours, and eventually terminated her. (*See* Letter from Rosato to Miller [Docket 96-15]; Miller Dep. [Docket 96-3], at 103:14-25; 104:1-18). A reasonable jury could find that a limitation of work hours had nothing to do with her 25-pound lifting restriction and was instead in response to the plaintiff's pregnancy. In fact, the 25-pound lifting restriction could be, and was, accommodated by having other employees lift heavy packages when they arrived. (*See* Decl. of Christina Lane [Docket 93-25], at 3).

Finally, the defendants argue that the plaintiff cannot point to a single non-pregnant employee who was treated differently. The defendants state that FedEx places all employees who are medically restricted from performing the full range of their duties on medical leave or light-duty assignments. (*See* Reply Br. [Docket 97], at 2). But as previously stated, there is a dispute of fact whether the plaintiff was actually restricted from performing her normal duties. Therefore, it is irrelevant whether FedEx places other employees who cannot perform their normal duties on medical leave.

On this evidence, I **FIND** that there is a genuine dispute of material fact and the plaintiff has raised an "inference" of discrimination necessary to show a discriminatory motive. Syl. Pt. 2, *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 156 (W. Va. 1995) ("The 'but for' test of discriminatory motive . . . is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination."). Further, a reasonable jury could find that the defendants' reasons for taking adverse actions against the plaintiff were merely a pretext for discrimination because capping the plaintiff's work hours does not relate to a 25-pound lifting restriction. Therefore, the defendants' motion with respect to the WVHRA claim premised on pregnancy-based discrimination is **DENIED**.

### 2. Disability Discrimination

The WVHRA makes it illegal "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or disabled." W. Va. Code § 5-11-9(1). To establish a prima facie case for disability discrimination under the WVHRA, the plaintiff must show (1) that she was a disabled person within the meaning of the law, (2) that she was qualified to perform the essential functions of her job with or without reasonable accommodations, and (3) that she suffered an adverse employment action under circumstances from which an inference of discrimination arises. *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 581 n.22 (W. Va. 1996). I **FIND** that the plaintiff has failed to establish that she was disabled under the meaning of the law.

Although the WVHRA defines "disability" as a mental or physical impairment that limits a person's "major life activities," it also defines "disability" as "[b]eing regarding as having such an

impairment." W. Va. Code § 5-11-3(m). Here, the parties disagree whether FedEx regarded the plaintiff as having a disability.

As evidence that FedEx regarded the plaintiff as disabled, the plaintiff relies on the statements of Mike Davis, Senior Manager of FedEx's Charleston station. Davis testified that he believed the plaintiff's 25-pound lifting restriction was a "serious medical condition" and that it was outside "the norm" to have such a restriction early in pregnancy. (Davis Dep. [Docket 96-4], at 66-67). However, it is undisputed that Davis was not responsible for determining whether employees qualified for medical leave, and he was not involved in FedEx's decision to place the plaintiff on medical leave. (*See id.* at 46, 58, 64, 66). Instead, officials at FedEx's Human Capital Management Program ("HCMP") made this determination. (*See* Jones Dep. [Docket 96-6], at 45:4-10; Barkdull Dep. [Docket 96-25], at 43:14-17; 46:9-19; 47:11-23). Therefore, Davis's testimony is speculation and is not relevant to whether *FedEx* regarded the plaintiff as disabled. The plaintiff also points to Gonzalez's testimony that the plaintiff's condition qualified her for medical leave (*See* Gonzalez Dep. [Docket 96-2], at 54-55). This evidence suffers from the same problem. Gonzalez, the plaintiff's direct supervisor, did not make medical leave determinations at FedEx and did not make the determination in this case.

Finally, the plaintiff relies on the testimony of Michael Rosato, an HCMP advisor, who stated that if employees have limitations "germane to their position" that are "serious enough" that the employee cannot perform their full scope of responsibilities, he would place them on medical leave. (*See* Rosato Dep. [Docket 96-8], at 76:23-77:3). But this is not evidence that FedEx regarded *the plaintiff* in this case as disabled.

The plaintiff has not proffered evidence that relevant decisionmakers at FedEx regarded the plaintiff as disabled as defined by the WVHRA. Therefore, the plaintiff cannot proceed on a theory of disability discrimination, and the defendants' motion on this theory is **GRANTED**.

### B. FMLA Interference and Termination

The plaintiff alleges that the defendants wrongfully interfered with her rights under the FMLA and terminated her in violation of the FMLA. It is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615. Therefore, whether the defendants interfered with the plaintiff's rights under the FMLA depends on whether the plaintiff was qualified to receive FMLA benefits. As I explain below, I **FIND** that a genuine dispute of fact precludes determining whether the plaintiff was able to perform the essential functions of her job and was therefore qualified to receive FMLA benefits.

Under the FMLA, a qualified employee is entitled to a total of 12 weeks of leave during any 12-month period for qualifying medical or family reasons. 29 U.S.C. § 2612(a)(1); *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 381-82 (4th Cir. 2001). One of the acceptable qualifying reasons is "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." *Id.* § 2611(11). A serious health condition involving continuing treatment by a health care provider includes "any period of incapacity due to pregnancy, or for prenatal care." 29 C.F.R. § 825.115(b). This includes the period following childbirth. *See id.* § 825.120(a)(4).

In addition to having a "serious health condition," the employee must be "unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employee

10

is unable to perform the functions of the position "where the health care provider finds that the employee is . . . unable to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act . . . and the regulations at 29 CFR 1630.2(n)." 29 C.F.R. § 825.123. The regulations offer an unhelpful definition: "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). The regulations provide three examples of why a job function may be considered essential:

> (i) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function

*Id.* § 1630.2(n)(2). Evidence that a job function is essential includes, but is not limited to "[w]ritten job descriptions," "[t]he employer's judgment as to which functions are essential," and the "amount of time spent on the job performing the function." *Id.* § 1630.2(n)(3).

The defendants argue that the plaintiff suffered from a serious health condition that prevented her from performing an essential function of her job. The defendants therefore contend that FedEx was justified in placing the plaintiff on FMLA leave when she became unable to lift more than 25 pounds, and it was justified in terminating her when her leave expired. This argument easily fails. There is clearly a dispute whether the plaintiff's 25-pound lifting limitation qualifies as a "serious medical condition" that left her unable to perform "essential" duties. As discussed above, there is a genuine dispute whether lifting up to 75 pounds is an essential duty of the

plaintiff's job. This dispute is based on inconsistencies in the job description and conflicting testimony regarding the number of packages exceeding 25 pounds that customer service agents handled. Therefore, the defendants' motion for summary judgment on wrongful interference and termination in violation of the FMLA is **DENIED**.

### C. Retaliation Claims under the WVHRA and FMLA

The plaintiff alleges that the defendants retaliated against her for exercising her rights under the WVHRA and the FMLA. The WVHRA provides that it is unlawful for a person or employer to "[e]ngage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." W. Va. Code § 5-11-9(7)(C). To establish a claim of retaliation under the WVHRA, a plaintiff must prove (1) that she was engaged in a protected activity, (2) that her employer was aware of the protected activity, (3) that her employer subsequently took adverse action against her, and (4) that the adverse action followed her protected activity within such a period of time that retaliatory motivation can be inferred. *See Frank's Shoe Store v. W. Va. Human Rights Comm'n*, 365 S.E.2d 251, 259 (W. Va. 1986) (applying W. Va. Code § 5-11-9 to retaliatory discharge claim).

The plaintiff also alleges retaliation in violation of the FMLA. The test for showing retaliation under the FMLA is similar to that under the WVHRA. To succeed on a retaliation claim in this context, a plaintiff must make a prima facie showing (1) that she engaged in protected activity, (2) that her employer took adverse action against her, and (3) that the adverse action was causally connected to the plaintiff's protected activity. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006).

Under both tests, the plaintiff has presented sufficient evidence in support of her claims. As explained above, it is undisputed that the plaintiff informed her supervisor that she was pregnant and that she could not lift more than 25 pounds. Within days, the plaintiff was involuntarily placed in FedEx's TRW medical leave program. The TRW program capped the plaintiff's hours and counted the hours she did not work against her available FMLA leave. By the time the plaintiff sought to use her FMLA leave during childbirth and recovery, she had no leave available. Finally, the plaintiff's position at the Charleston station was eliminated.

The defendants argue that the plaintiff cannot establish a causal connection between her pregnancy and her termination because of the substantial delay between the plaintiff's protected activity and her termination. (*See* Defs.' Mem. [Docket 94], at 17). The plaintiff informed FedEx of her pregnancy and lifting restriction on May 11, 2011, and she was terminated on May 21, 2012. The defendants cite several cases holding that delays of more than three months between the protected activity and the alleged retaliatory action, without other evidence of retaliatory intent, are insufficient to show causation. *See, e.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (per curiam) (twenty months); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) (six months); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (three year delay). But here, the plaintiff argues that FedEx retaliated against her by first reducing her hours, which occurred just days after informing her supervisor that she was pregnant. Therefore, the cases cited by the defendants are inapposite.

I therefore **FIND** that a reasonable jury could infer that the reduction in the plaintiff's hours and the eventual elimination of her position were causally related to the plaintiff's pregnancy and inability to lift more than 25 pounds. Accordingly, the defendants' motion for summary judgment on the plaintiff's retaliation claims is **DENIED**.

**D. Claims against Norma Gonzalez**

The defendants argue that the plaintiff has failed to present any evidence that Norma Gonzalez, the plaintiff's supervisor, should be liable for the alleged violations of the plaintiff's rights under the WVHRA or the FMLA. As I explain below, I agree with the defendants in part. While a jury could find Gonzalez liable under the WVHRA, there is no evidence tending to show Gonzalez is liable for violations of the FMLA.

It is clear that supervisors may be held liable for the discriminatory acts of their employer under the WVHRA. The WVHRA makes it illegal for "any person" to "[e]ngage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or *to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section.*" W. Va. Code § 5-11-9(7) (emphasis added). The Supreme Court of Appeals has held that "person" in this context refers to both employers and employees. *See* Syl. Pt. 3, *Holstein v. Norandex, Inc.*, 461 S.E.2d 473, 474 (W. Va. 1995). Therefore, Gonzalez may be liable for the discriminatory practices of FedEx if Gonzalez aided, abetted, incited, compelled, or coerced FedEx's violations of the WVHRA. *See id.* at 478 (holding that a "cause of action may properly be based upon an allegation that the defendant employee aided or abetted an employer engaging in unlawful discriminatory practices").

It is undisputed that Gonzalez did not decide whether to place the plaintiff on leave under either the FMLA or FedEx's TRW program. Rather, these decisions were made by FedEx's HCMP advisors, Tim Jones and Gregory Barkdull. (*See* Jones Dep. [Docket 96-6], at 45:4-10; Barkdull Dep. [Docket 96-25], at 43:14-17; 46:9-19; 47:11-23). It is also undisputed that Gonzalez

14

did not decide whether to eliminate the plaintiff's position at the Charleston station. That decision was made by Gonzalez's supervisor, Mike Davis. (*See* Gonzalez Dep. [Docket 96-2], at 74-76).

Despite these facts, the plaintiff argues that Gonzalez "actively participated" in the plaintiff's discrimination by determining what work was available for the plaintiff under the TRW program and how many hours the plaintiff could work. (*See* Pl.'s Resp. [Docket 96], 20). The plaintiff points to testimony from Tim Jones that "[t]he manager [Gonzalez] requested that we place her on light duty. The manager indicated that she had work available [for the plaintiff.]" (Jones Dep. [Docket 96-9], at 45:13-17). Further, Gregory Barkdull testified that station managers, such as Gonzalez, would assist in calculating caps for employee hours under the TRW program by determining "what the employee's normal scheduled hours are" so those hours could be reduced. (*See* Barkdull Dep. [Docket 96-25], at 42:22-23). Finally, Michael Rosato testified that station managers determined whether work was available for employees on the TRW program. (*See* Rosato Dep. [Docket 96-8], at 78:15-24). Although this evidence is weak, when viewed in the light most favorable to the plaintiff I **FIND** that it shows Gonzalez *at least* aided FedEx decisionmakers in taking allegedly discriminatory actions against the plaintiff in violation of the WVHRA. Therefore, the defendants' motion for summary judgment on Gonzalez's liability for WVHRA violations is **DENIED**.

Although an individual may be liable for aiding and abetting violations of the WVHRA, there is no analogous provision in the FMLA. The FMLA merely provides that it is unlawful "for *any employer* to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1) (emphasis added). The term "employer," as used in the FMLA, "includes . . . any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.]" 29 U.S.C. § 2611. While the Fourth Circuit

has not decided whether supervisors may be individually liable for violations of the FMLA, *see Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010), it is undisputed that Gonzalez did not make decisions concerning the plaintiff's FMLA rights. (*See* Gonzalez Dep. [Docket 96-2], at 79:16-18). Therefore, there is no evidence that Gonzalez violated the plaintiff's FMLA rights. Accordingly, the defendants' motion for summary judgment on Gonzalez's liability for FMLA violations is **GRANTED**.

### E. Punitive Damages under the WVHRA

The defendants contend that the plaintiff failed to present any evidence entitling her to punitive damages under the WVHRA. I agree. Upon finding discriminatory conduct in violation of the WVHRA, a court may

> enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay *or any other legal or equitable relief as the court deems appropriate*.

W. Va. Code § 5-11-13(c) (emphasis added). Although the WVHRA does not expressly contemplate punitive damages, the Supreme Court of Appeals has construed the provision allowing courts to award "any other legal or equitable relief" as providing for punitive damages. *See* Syl. Pt. 5, *Haynes v. Rhone-Poulenc, Inc.*, 521 S.E.2d 331, 332 (W. Va. 1999). However, *Haynes* did not establish guidelines specific to WVHRA claims for awarding punitive damages. Instead, the court held that punitive damages are generally appropriate where a defendant acted "maliciously, oppressively, wantonly, willfully, recklessly, or with criminal indifference to civil obligations." *Haynes*, 521 S.E.2d at 348 (quoting *Alkire v. First Nat. Bank of Parsons*, 475 S.E.2d 122, 129 (W. Va. 1996)). Similarly, the court affirmed an award of punitive damages pursuant to the WVHRA where the jury found that the defendant's conduct was "malicious, oppressive,

wanton, willful, reckless or with criminal indifference to civil obligations." *CSX Transp., Inc. v. Smith*, 729 S.E.2d 151, 160 (W. Va. 2012). Therefore, I will determine if the plaintiff has presented evidence that the defendants acted maliciously, oppressively, wantonly, willfully, recklessly, or with criminal indifference to its obligations under the WVHRA.

Here, the plaintiff argues that the defendants acted recklessly, maliciously, and willfully by placing the plaintiff on medical leave under the TRW program and deducting her FMLA leave based on the erroneous determination that the plaintiff suffered from a "serious medical condition." (*See* Pl.'s Resp. [Docket 96], at 21). I disagree. Examined in the light most favorable to the plaintiff, the evidence the does not show that the defendants recklessly, maliciously, or willfully discriminated against the plaintiff for being pregnant. There is no evidence whatsoever that the defendants harbored any resentment against the plaintiff for being pregnant or willfully or recklessly sought to violate her rights. The facts in this case are unlike those where the Supreme Court of Appeals found punitive damages to be appropriate for violations of the WVHRA. *See, e.g.*, *Smith*, 729 S.E.2d at 171 (employer, inter alia, failed to discipline or investigate employee for "history of sexually harassing comments" and employer attacked the plaintiff's character when it "accused her of dishonesty and theft" before discharging her); *Haynes*, 521 S.E.2d at 348 ("[T]he jury could have found that [supervisor] was intolerant and disdainful of the plaintiff's seeking a job change and an extended medical leave due to her high-risk pregnancy [where supervisor stated] 'she goes to so many doctors . . . in eight years I did not take one day off.'"). Therefore, the defendants' motion for summary judgment on punitive damages is **GRANTED**.

### F. Liquidated Damages under the FMLA

A plaintiff who makes out a successful claim under the FMLA is generally entitled to an award of liquidated damages, which is an amount equal to back pay plus interest. 29 U.S.C. §

2617(a)(1)(A)(iii). The district court, in its discretion, can reduce or eliminate the amount of liquidated damages if "an employer who has violated [the FMLA]" proves that it acted in good faith and had reasonable grounds for taking the action that constituted the violation of the FMLA. *Id.* The defendants ask that I grant summary judgment on the issue of liquidated damages because FedEx acted in good faith and had reasonable grounds to place the plaintiff on FMLA leave. But 29 U.S.C. § 2617(a)(1)(A)(iii) applies only to employers who have "violated" the FMLA. FedEx has not been found to have violated the FMLA. The jury will make that determination. The defendants point to no authority indicating that I can consider their defense to liquidated damages before they have been found to have violated the FMLA. Therefore, the defendants' motion for summary judgment on the issue of liquidated damages is **DENIED without prejudice**.

### V. Conclusion

For the reasons stated above, the Defendants' Motion for Summary Judgment [Docket 93] is **GRANTED in part** and **DENIED in part**, and the Plaintiff's Motion to Strike "Exhibit A" from Reply Brief [Docket 99] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 21, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE